UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRENT JAMES SCHUSTER,                                            REPORT

                              Plaintiff,                              and

                                                               RECOMMENDATION

              v.

                                                               14-CV-486V(F)

CAROLYN W. COLVIN,[1] Commissioner of
Social Security,

                              Defendant.

_____

APPEARANCES:            LAW OFFICES OF CLARK & JORDAN-PUGH, PLLC
                        Attorneys for Plaintiff
                        AMANDA R. JORDAN-PUGH, Of Counsel
                        1207 Delaware Avenue
                        Suite 101
                        Buffalo, New York 14209

                        WILLIAM J. HOCHUL, JR.
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        EMILY M. FISHMAN
                        Assistant United States Attorney, of Counsel
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York 14202, and

                        STEPHEN P. CONTE
                        Regional Chief Counsel - Region II
                        United States Social Security Administration
                        Office of the General Counsel, of Counsel
                        26 Federal Plaza, Room 3904
                        New York, New York 10278

_____

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on November 14, 2014.[2] (Doc. No. 9). The matter is presently before the court on Plaintiff's motion for judgment on the pleadings or alternatively, for remand for further development of the record filed on November 13, 2014 (Doc. No. 8), and Defendant's motion for judgment on the pleadings filed on December 19, 2014. (Doc. No. 10).

## BACKGROUND

Plaintiff Brent Schuster ("Plaintiff" or "Schuster"), seeks review of Defendant's decision denying him Social Security Disability Insurance benefits under ("SSDI") under Title II of the Act, and Supplemental Security Income Benefits ("SSI") under Title XVI of the Act. In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairment of degenerative disc disease status-post four surgeries, but did not have an impairment or combination of impairments within the Act's definition of impairment. (R. 25). [3] Defendant determined that even if Plaintiff's medically determinable impairment could reasonably be expected to produce Plaintiff's alleged symptoms, their persistence and limiting effects alleged by Plaintiff were not credible. (R. 26). The ALJ further determined that Plaintiff did not meet the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 1.04, at any time from the alleged onset date of August 1, 2007, through the date of the Administrative Law Judge's decision on January 25, 2013. (R. 22).

---

[2] Hon. Richard J. Arcara reassigned the case to Hon. Lawrence J. Vilardo on November 23, 2015.

[3] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

## PROCEDURAL HISTORY

On July 27, 2011, Plaintiff filed an application for supplemental insurance benefits under Titles II and XVI of the Act.  (R. 167-73).  Plaintiff's application alleged disability based on a back impairment as of August 1, 2007.  (R. 168).  Plaintiff's applications were initially denied by Defendant on October 6, 2011(R. 73), and pursuant to Plaintiff's request filed October 26, 2011 (R. 81-89), a hearing was held before Administrative Law Judge Miriam Shire ("Shire" or "the ALJ"), on August 22, 2012, in Brooklyn, New York.  (R. 39-71).  Plaintiff, unrepresented by counsel, appeared and testified at the hearing.  *Id.*  The ALJ's decision denying the claim was rendered on January 25, 2013.  (R. 22-35).

On March 12, 2013, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 10-11).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on April 25, 2014.  (R. 1-6).  This action followed on June 20, 2014, with Plaintiff alleging the ALJ erred by failing to find him disabled.  (Doc. No. 1).

On November 13, 2014, Plaintiff filed a motion for judgment on the pleadings or alternatively, remand of the matter for further development of the record ("Plaintiff's motion"), accompanied by a supporting memorandum of law (Doc. No. 8) ("Plaintiff's Memorandum").  On December 19, 2014, Defendant filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Defendant's Memorandum").  Plaintiff filed a Reply/Response on January 4, 2015,

(Doc. No. 15) ("Plaintiff's Reply Memorandum").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be GRANTED; Plaintiff's motion should be DENIED as to his request for judgment on the pleadings, and alternatively, DENIED as to his request for remand for further clarification of the record consistent with this Report and Recommendation.

## **FACTS**[4]

Plaintiff Brent Schuster ("Schuster" or "Plaintiff") was born on June 7, 1972 (R. 162), and lives with his father and three children.  (R. 129).  Plaintiff's most recent work experience includes work as a home repair and maintenance person.  (R. 45-46).  Plaintiff alleges that he stopped working on July 31, 2007, because Plaintiff's back impairment rendered him unable to do the work his job required.

Relevant to the period of disability in this case, on August 11, 2007, Plaintiff sought treatment from the Westfield Memorial Hospital in Westfield, New York, for joint pain and a high fever.  (R. 372-76).  Upon admission, Plaintiff was administered intravenous fluids, and discharged on August 14, 2007. (R. 376).

On October 30, 2007, Plaintiff visited Paul S. Holley, M.D. ("Dr. Holley"), Plaintiff's treating physician, for back pain and Dr. Holley assessed Plaintiff with no spasm or light touch deficit, symmetrical patellar and ankle jerk reflexes, and decreased strength in Plaintiff's left foot, and recommended Plaintiff undergo a magnetic resonance imaging ("MRI") scan of his spine.  (R. 345).

---

[4] Taken from the pleadings and the administrative record.

On February 12, 2008, Plaintiff underwent MRI of Plaintiff's lumbar spine that Ronald Klizek, M.D. ("Dr. Klizek"), opined showed mild to moderate disc protrusion at Plaintiff's L5-S1[5] disc segment with a mild compromise to Plaintiff's left neural foramina (nerve opening), and postoperative-type changes at Plaintiff's L4-L5 disc segment without definitive evidence of a recurrent disc herniation.  (R. 270).

On February 22, 2008, Plaintiff returned to Dr. Holley with back pain and left foot weakness.  (R. 347-48).  Upon examination, Plaintiff was assessed with hip flexion of 25 degrees, a positive straight leg raising[6] ("SLR") test that measured 35 degrees on the left side and 60 degrees on Plaintiff's right side, some left leg numbness with decreased strength with flexion, and slightly decreased ankle reflexes on Plaintiff's left side.  Dr. Holley referred Plaintiff to a spinal surgeon for further evaluation.  *Id.*

On March 31, 2008, James G. Egnatchik, M.D. ("Dr. Egnatchik"), a neurosurgeon, completed a physical examination on Plaintiff and assessed Plaintiff with antalgic gait (postural walking to avoid pain), limited range of motion ("ROM") secondary to pain and stiffness, a positive SLR test that measured 60 degrees of the left and 30 degrees on Plaintiff's right side, intact reflexes at Plaintiff's knees and right ankle, absent at Plaintiff's left ankle with intact sensation (R. 259), and recommended that Plaintiff undergo disc arthroplasty (artificial disc replacement) surgery that was subsequently performed on July 22, 2008.  (R. 237-41, 260).

On August 1, 2008, Dr. Egnatchik noted that Plaintiff was doing "fairly well," and able to walk without any assistive devices.  (R. 462-63).

---

[5] The lumbar spine is located in the area of an individual's lower back, and is comprised of five disc segments numbered L1 through L5, the sacrum bone, and coccyx (tailbone).

[6] A SLR test is used to evaluate whether an individual's leg pain is associated with a herniated disc. The test is performed by lifting the legs while in a seated or supine position.

On August 18, 2008, Plaintiff underwent a lumbar spine X-ray that revealed no evidence of hardware failure from Plaintiff's surgery, and normal vertebral alignment. (R. 275). Upon review of Plaintiff's lumbar X-ray, Dr. Egnatchik opined that Plaintiff's prosthetic device was in excellent position and prescribed Arthotec to treat Plaintiff's inflammation.  (R. 255).

On September 20, 2008, Plaintiff visited the Westfield Hospital emergency room, and was evaluated with blood in his urine.  (R. 399).  A computerized tomography ("CT") scan of Plaintiff's kidneys revealed a kidney stone in Plaintiff's right kidney.  (R. 412).

On September 26, 2008, Plaintiff underwent a lumbar X-ray that revealed some degenerative changes that did not appear marked, satisfactory bony alignment and well maintained vertebral heights.  (R.275-76).

A visit to Dr. Egnatchik on October 17, 2008, showed Plaintiff with lower back pain leading Dr. Egnatchik to order an MRI completed on October 29, 2008, that showed Plaintiff with no conclusive disc abnormality, spinal or foraminal stenosis (abnormal narrowing).  (R. 253, 77-78).

On March 4, 2009, Plaintiff returned to Dr. Holley with back pain, and radiation and numbness in both legs.  (R. 349-50).  Dr. Holley assessed Plaintiff with hip flexion with associated pain at 30 degrees, moderately tender paravertebral muscles, a positive SLR test that measured 40 degrees on the right and 20 degrees on Plaintiff's left side, minimally decreased sensation to touch, an intentional, slow, antalgic gait, and normal equal reflexes.  *Id.*

On April 29, 2009, Plaintiff visited Dr. Egnatchik who, upon examination, evaluated Plaintiff with the ability to rise on his heels and toes and perform a partial

knee bend. (R. 456-57). Dr. Egnatchik assessed Plaintiff with difficulty standing erect, motor strength that measured 5 of 5 on a five-point scale, intact reflexes and sensation, and no swelling, and administered an epidural injection to Plaintiff's back on May 21, 2009. (R. 248-49).

On July 13, 2009, Fred Cohen, M.D. ("Dr. Cohen"), a consultative physician with the Social Security Administration, completed an independent medical examination of Plaintiff that showed normal upper extremity and right leg strength, give away weakness to Plaintiff's left leg, normal sensation, antalgic gait, and a positive SLR test measured at 5 degrees on Plaintiff's right side, with limited bending. (R. 332). Dr. Cohen diagnosed Plaintiff with failed back surgery syndrome, chronic pain syndrome, and possible lumbar adhesive arachnoiditis (inflammation of the membrane that surrounds the spinal column). *Id.* Dr. Cohen evaluated Plaintiff with a marked, permanent, partial disability, but did not believe that Plaintiff was completely disabled from work, and opined that Plaintiff was capable of performing sedentary or light work on at least a part-time basis. *Id*

A visit to Dr. Egnatchik on November 19, 2009, showed Plaintiff with normal gait, limited ROM secondary to pain, and intact reflexes and motor strength. (R. 247).

A computerized tomography ("CT") scan of Plaintiff's lumbar spine on March 18, 2010, showed no compromise to Plaintiff's spinal canal, and normal disc spaces. (R. 281-82). A myelogram (X-ray that includes dye) completed that same day was normal, but resulted in a spinal headache for which Dr. Egnatchik prescribed a blood patch to close the hole that resulted from Plaintiff's myelogram. (R. 424).

On April 22, 2010, Plaintiff visited Dr. Egnatchik who evaluated Plaintiff with limited ROM, full motor strength, and normal reflexes.  (R. 244).  Dr. Egnatchik opined that Plaintiff was seventy-five percent permanently disabled.  *Id.*

On November 6, 2010, Dr. Cohen completed a worker's compensation evaluation of Plaintiff where Plaintiff reported activities of daily living that included dressing Plaintiff's baby, driving, doing dishes and laundry, vacuuming, shopping, and hobbies that include recreational fishing while in a seated position, attending sporting events, and "tinkering" with wood.  (R. 337).  Upon examination, Dr. Cohen assessed Plaintiff with good arm and leg strength, reduced knee and ankle reflexes, reduced sensation, a smaller left calf muscle than Plaintiff's right calf muscle, a positive SLR test on both sides, and forward bending to 10 degrees that Dr. Cohen opined supported that Plaintiff's diagnoses remained unchanged with no evidence of lumbar adhesive arachnoiditis, and that Plaintiff had a marked, permanent, partial disability, but was able to perform sedentary or light work on either a part-time or full-time basis.  Dr. Cohen noted that his review of Plaintiff's more recent diagnostic imaging results did not change his earlier conclusion that Plaintiff was able to perform sedentary or light work on a part or full-time basis.  (R. 340-41).

On May 20, 2011, Plaintiff returned to Dr. Holley for an allergy and medication consultation.  Dr. Holley evaluated Plaintiff with a positive SLR test that resulted in pain on both sides, symmetrical reflexes, and a tentative walk with no limp.  (R. 351-52).

On June 28, 2011, Plaintiff underwent a CT scan of Plaintiff's brain that showed no abnormality.  (R. 427).

On September 26, 2011, Samuel Balderman, M.D. ("Dr. Balderman"), completed a consultative examination on Plaintiff on behalf of the Social Security Administration where Plaintiff reported activities of daily living that included cooking, doing laundry, bathing and dressing. (R. 232-34). Upon examination, Dr. Balderman assessed Plaintiff with a normal gait and stance, and the ability to walk on his heels and toes, and rise form a chair without difficulty, a normal ROM of Plaintiff's cervical spine, lumbar flexion that measured 30 degrees, a positive SLR test that measured 20 degrees on Plaintiff's left side, full ROM of Plaintiff's shoulders, elbows, forearms, wrists, hips, knees, and ankles, stable joints with no swelling, heat, or effusion, and full reflexes and motor strength, and a moderate limitation to repetitive bending, lifting, and prolonged stand and sitting. *Id.*

On March 21, 2012, Dr. Holley completed a Medical Source Statement of Ability to do Work-Related Activities form, and noted that Plaintiff was able to lift and carry 10 pounds occasionally, sit for 15 minutes at a time for a total of four hours, stand for 10 minutes at a time for a total of one hour, walk for five minutes at a time for a total of 30 minutes total, and opined that Plaintiff would need to lie down for the remainder of each day to relieve the pressure on Plaintiff's spine. Dr. Holley opined that Plaintiff was not able to reach overhead, but was able to occasionally reach in all other directions, and frequently handle, finger, and feel with no pushing or pulling, occasionally climb stairs and ramps, never climb ladders or scaffolds, balance, stoop, crawl or crouch, and should not be exposed to most environmental conditions. (R. 485). Dr. Holley further opined that Plaintiff was not able to walk one block or climb a few steps at a reasonable pace, but was able to shop, travel independently, ambulate without an assistive device,

use public transportation, prepare simple meals, care for his personal hygiene, and use

paper and files.  (R. 486).

## DISCUSSION

**1.    Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to

perform any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

**A.    Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler  v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*

The next step is to determine whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities as defined in

the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent

impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an

impairment and the impairment, or an equivalent, is listed in Appendix 1 of the

regulations and meets the duration requirement, the individual is deemed disabled,

regardless of the applicant's age, education or work experience, 20 C.F.R. §§

404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant

with such an impairment is unable to perform substantial gainful activity.[8] 42 U.S.C. §§

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also*

*Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646

F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in

Appendix 1, the Commissioner must then consider the applicant's "residual functional

capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If

the applicant can still perform work he or she has done in the past, the applicant will be

denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past

work, the Commissioner will consider the individual's "residual functional capacity," age,

education and past work experience in order to determine whether the applicant can

perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also*

*Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must

---

[8] The applicant must meet the duration requirement which mandates that the impairment must last or be
expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was substantial evidence on which the Commissioner based the decision.  20 C.F.R. § 416.935(a); *Richardson*, 402 U.S. at 410.

## B.    Substantial Gainful Activity

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" for pay or profit.  20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574.  In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 1, 2007, the date upon which Plaintiff alleged the onset of disability.  (R. 24).  Plaintiff does not contest this determination.

## C.    Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether a disability claimant has a severe medically determinable physical or mental impairment that meets

the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits the claimant's ability to do "basic work activities."  If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more than screen out *de minimus* claims,  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *See Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856)).

In this case, the ALJ determined Plaintiff had the severe impairment of degenerative disc disease status-post surgery.  (R. 25).  Plaintiff does not contest this determination.

**D. Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration

requirement is satisfied, the impairment or impairments are considered severe enough

to prevent the claimant from performing any gainful activity and the claimant is

considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d.

45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed

impairments, the claimant is considered disabled").  In the instant case, the ALJ

determined that Plaintiff's impairments do not meet or medically equal the criteria

necessary to establish disability based on any impairment in the Listing of Impairments.

(R. 21).  In particular, the ALJ determined that Plaintiff did not meet the criteria for

disability under 20 C.F.R. Pt 404, Subpt. P, Appendix 1 § 1.04 (disorders of the spine).

Plaintiff does not contend any failure by the ALJ to properly analyze the severity

of Plaintiff's impairments under step two of the disability analysis, and the court

therefore does not proceed to discuss whether Plaintiff's degenerative disc disease

meets the criteria under any listed impairment.

**Treating physician rule**

Plaintiff contends that the ALJ violated the treating physician rule by improperly

assigning "little" weight to Dr. Holley's opinion that  Plaintiff was only able to sit for 15

minutes, stand for 10 minutes, walk for five minutes at a time for a total of four hours in

each workday, and walk for 30 minutes each day.  Plaintiff's Memorandum at 20-23.

Specifically, Plaintiff contends that the ALJ relied too heavily on the opinions of Drs.

Balderman and Cohen, consultative examiners who each examined Plaintiff on only one

occasion, and failed to provide reasons for  the weight the ALJ assigned to Dr. Holley's

opinion, and evaluate Dr. Holley's opinion in accordance with the factors set forth under

20 C.F.R. § 404.1527(c).  Plaintiff's Memorandum at 24.  Defendant maintains that the

ALJ correctly afforded less weight to Dr. Holley's opinion, as such opinion was inconsistent with the medical evidence in the record.  Defendant's Memorandum at 18-24.  Defendant further maintains that the ALJ did not reject the entirety of Dr. Holley's opinion; but rather, adopted the portion of Dr. Holley's opinion that would require Plaintiff to alternate between sitting and standing every 30 minutes, and lie down for 30 minutes during each workday. (R. 69).   Plaintiff's motion on this issue is without merit.

It is the responsibility of ALJs to weigh the medical evidence in the record, and determine which medical source opinions are supported by the record, and deserve more weight.  *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (where medical opinions are inconsistent, ALJ's have discretion to apportion weight to the opinions).

Under 20 C.F.R. § 416.927(c), ALJs are required to consider the following factors in weighing medical opinions of treating and non-treating physicians, and provide reasons for the weight assigned to each medical opinion:

(1) Examining relationship;
(2) Treatment relationship;
(3) Supportability;
(4) Consistency;
(5) Specialization, and
(6) Other relevant factors.

20 C.F.R. § 416.927(c).

As relevant, 20 C.F.R. § 416.927(e)(2)(ii) provides

When an administrative law judge considers findings of a State agency  medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions.

Accordingly, the treating physician rule provides the framework for reviewing agency consultant findings.

In this case, the ALJ's reasoning to support the weight the ALJ assigned to the opinions of Drs. Balderman, Cohen, and Holley, included that "significant weight" was given to the opinion of Dr. Balderman as Dr. Balderman's opinion was consistent with his physical examination of Plaintiff. (R. 32). The ALJ further afforded "substantial weight" to the opinion of Dr. Cohen because Dr. Cohen's opinion was supported by Dr. Egnatchik's clinical findings, and that the ALJ assigned "little weight" to the opinion of Dr. Holley, as Dr. Holley's opinion was inconsistent with Plaintiff's own reported activities of daily living. (R. 32). As such, the ALJ complied with the requirements under § 416.927(c), and Plaintiff's motion on this issue is without merit.

**Credibility**

In this case, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the Plaintiff's statements concerning the intensity and persistence alleged by Plaintiff were inconsistent with the ALJ's residual functional capacity assessment of Plaintiff, and therefore not credible. (R. 26). Plaintiff alleges that the ALJ's credibility determination of Plaintiff is error as the ALJ "cherry-picked" evidence to support the ALJ's adverse determination, and failed to account for Plaintiff's persistent attempts to relieve Plaintiff's back pain, and failed to particularize which factors undermined Plaintiff's credibility in accordance with 20 C.F.R. § 404.1527. Plaintiff's Memorandum at 18-20. Defendant maintains that the ALJ properly considered Plaintiff's activities of daily living, included consideration of Plaintiff's four back surgeries and other treatments, and provided

sufficient reasoning to support the ALJ's adverse credibility assessment of Plaintiff. Defendant's Memorandum at 24-26.

It is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. App'x. 29, 35 (2d Cir. 2013). Pain or other symptoms may be important factors contributing to a disability claimant's functional loss and may affect a claimant's ability to perform basic work activities if relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms" *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)). In instances where the ALJ's decision contains specific reasons for the finding on credibility sufficient to allow this court to "glean" the rationale of the ALJ's decision, remand is not appropriate. *Cichoki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (remand not appropriate where reviewing court is able to understand rationale for ALJ's credibility determination))). Such is the case here.

In particular, the ALJ's credibility assessment included Plaintiff's August 29, 2011, report of activities of daily living where Plaintiff reported activities of daily living that include caring for Plaintiff's children, running errands, preparing meals, cleaning, mowing the lawn, and engaging in outdoor hobbies like hunting and fishing. (R. 26).

The ALJ also included Plaintiff's interview at the Social Security Administration field office where Plaintiff exhibited no difficulty sitting, standing, walking, or using his hands. (R. 26).  As such, the ALJ provided specific reasons to support the ALJ's credibility determination of Plaintiff enough to allow the court to "glean" the rationale behind the credibility assessment and does not require remand. *See Cichocki,* 534 Fed. App'x at 76.  Plaintiff's motion on this issue should be DENIED.

## E. "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work.  "Residual functional capacity" is defined as the capability to perform work comparable to the applicant's past substantial gainful activity.  *Cosme v. Bowen*, 1986 WL 12118, at *3 (S.D.N.Y. 1986).

In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of "sedentary"[9] work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), and that Plaintiff was not disabled under the Medical Vocational Rule 202.20.  (R. 21, 28).  Plaintiff contends that the ALJ's residual functional capacity assessment is without the support of substantial evidence as the ALJ failed to fully develop the record and include Plaintiff's absenteeism and inability to work on a regular basis in the ALJ's RFC analysis.  Plaintiff's Memorandum at 21.  Plaintiff's motion on this issue is without merit.

As discussed, Discussion, *supra* at 15-17, the ALJ correctly attributed no weight to Dr. Holley's opinion on Plaintiff's ability to perform work, but adopted Dr. Holley's

---

[9] "Sedentary work" is defined as work that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  *See* 20 C.F.R. § 404.1567(a).

opinion that Plaintiff's work would require the accommodation to alternate between sitting and standing every 30 minutes, and lie down for 30 minutes during each workday.  The ALJ's residual functional capacity assessment of Plaintiff is therefore based on substantial evidence and includes Plaintiff's non-exertional limitations. Plaintiff's motion on this issue should be DENIED.

## F. Suitable Alternative Employment in the National Economy

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment , 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker*, 626 F.2d 225 at 231.  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id.*  An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*,

647 F.2d at 294.  In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[10]  *Id.* at 294.  This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy.  *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy.  *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, no error attributes to the ALJ's determination that jobs exist in the regional and national economies that Plaintiff is able to perform.  The ALJ accounted for Plaintiff's non exertional limitations in the ALJ's hypothetical questions posed to the VE that included the need to lie down for 30 minutes each day, a 30 minute sit/stand option, and occasional reaching overhead with the right extremity, occasional use of foot

---

[10] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".  *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  20 C.F.R. § 404.1568(b).

controls balancing, climbing, stooping, kneeling, crouching, and crawling, and no exposure to temperature extremes, and no work around heights, to which the VE opined Plaintiff would be able to perform the positions of buckler and lacer with 14,000 jobs available in the national economy,[11] pricing clerk with 495,000 jobs in the national economy, and call-out operator, with 249,000 jobs available in the national economy. (R. 67-69).  As such, the ALJ correctly found that Plaintiff is able to perform sedentary work that included Plaintiff's non-exertional limitations.

## CONCLUSION

Based on the foregoing, Defendant's motion should be GRANTED; Plaintiff's motion should be DENIED as to judgment on the pleadings and DENIED as to Plaintiff's alternative motions.  The Clerk of the Court should be instructed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    October 20, 2016
          Buffalo, New York

---

[11] VEs are not required to denote the number of jobs available in the local economy.  *See* 42 U.S.C §§ 423(d)(2)(A), 1382c(a)(3)(B) "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him . . ."

.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      October 20, 2016
                 Buffalo, New York